UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE:

DOUGLAS B. NOBLE            CHAPTER 7
                                      CASE NO.: 15-12077 FJB
    Debtor

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Barry Kirshner (Kirshner) a secured creditor of the above captioned Debtor, Douglas B. Noble (hereinafter the "Debtor"), pursuant to 11 U.S.C. § 362(d), respectfully requests that this Court enter an order granting Kirshner relief from the automatic stay to foreclose Kirshner's security interest in the property of the Debtor consisting of the Debtor's economic interest in WEJJ-MED Realty LLC ("WEJJ-MED"), a Delaware limited liability company, and its parent company Commonwealth Communities Master Holding Company, LLC (a Delaware limited liability company), and the Debtor's interest in F.S. Pops, LLC (a Massachusetts limited liability company), and the Debtor's interest in shares of Big Belly Solar, Inc., a privately held Company (formerly known as Seahorse Power Company) dba Fat Belly Recycle Bins. In support of this Motion, Kirshner states as follows:

## THE LOANS

1. Between August 1, 2009 and November 15, 2013, Kirshner loaned a total principal amount of $2,275,000.00 to the Debtor (collectively the "Loans"). The obligations of the Debtor to repay the $2,275,000.00 Loans are evidenced and secured by, among other things, the following:

- 1 -

- 2 -

(i)     a certain Promissory Note dated August 1, 2009 executed by the Debtor in favor of Kirshner in the original principal amount of $1,500,000.00, a true copy of which Note is annexed hereto as Exhibit "A";

(ii)    a certain Security Agreement dated August 1, 2009 by the Debtor in favor of Kirshner covering all current and future obligations .

Among other things, the Security Agreement:

a.     Defines "Collateral" (para. 1.7) as:  "all of Debtor's personal property, wherever located, both now owned and hereafter acquired, including, but not limited to:", and then goes on to list various categories of property including: (i) "General Intangibles", and (ii) "Investment Property", and (iii) "Stocks, bonds, investments".

b.     Defines the secured "Obligations" broadly (para. 1.18) as follows:

"Obligations" is intended in its broadest sense and shall include the full and punctual observance and performance of all present and future duties, covenants and responsibilities due to Creditor by Debtor whether under this Agreement, the Note, the Loan Documents or otherwise; all present and future obligations and liabilities of Debtor to Creditor for the payment of money whether under this Agreement, the Note, the Loan Documents or otherwise (extending to all principal amounts, interest, late charges, fees and all other charges and sums, as well as all costs and expenses payable by Debtor under this Agreement, the Note, the Loan

- 3 -

Documents or otherwise); all such obligations, whether direct or indirect, contingent or noncontingent, matured or unmatured, accrued or not accrued, related or unrelated to this Agreement, whether or not now contemplated, whether or not any instrument or agreement relating thereto specifically refers to this Agreement, including, without limitation, ... claims against Debtor acquired by assignment to Creditor, whether or not secured under any other document, or agreement or statutory or common law provision, as well as all renewals, refinancing's, consolidations, re-castings and extensions of any of the foregoing, the parties, acknowledging that the nature of the relationship created hereby contemplates the making of future advances by Creditor to Debtor.

c. In para. 2.1 the agreement grants to the Creditor a security interest as follows:

Security Interest. As security for the payment and performance of all of the Obligations, whether or not any instrument or agreement relating to any Obligation specifically refers to this Agreement or the security interest created hereunder, Debtor hereby assigns pledges and grants to Creditor a continuing security interest in the Collateral. Creditor's security interest shall continually exist until all Obligations have been paid in full.
A true copy of which Security Agreement is annexed hereto as Exhibit "B"; and

(iii) a certain Promissory Note dated April 1, 2010 by the Debtor in favor of

- 4 -

Kirshner in the original principal amount of $500,000., a true copy of which Note is annexed hereto as Exhibit "C."

(iv) a certain Promissory Note dated November 15, 2012 by Debtor in favor of Kirshner in the original principal amount of $275,000.00, a true copy of which Note is annexed hereto as Exhibit "D"; and

(v) a certain UCC Financing Statement filed August 6, 2012 by the Debtor in favor of Kirshner covering all of the Debtor's assets and general intangibles between the parties, a true copy of which UCC Financing Statement is annexed hereto as Exhibit "E."

2. Pursuant to the Loan Documents, Kirshner holds a valid and perfected lien on all of the Debtor's assets (the "Kirshner Collateral") under applicable State, Federal UCC law.

**BACKGROUND, AND PRE-PETITION DEBTOR DEFAULTS**

3. According to Debtor's Schedule B, the Debtor's assets consist of;

    a. WEJJ-MED Realty LLC - Debtor is the managing partner of WEJJ-MED. The sole member of WEJJ-MED is Commonwealth Communities Master Holding Company, LLC ("CC LLC"). The Debtor owns a 50% membership interest in CC LLC. Debtor values this asset as worth $500,000.;

    b. F.S. Pops, LLC - a Massachusetts limited liability company that owns a liquor license in Boston which it allows a

- 5 -

        restaurant known as Kitchen to operate with under an asset sale agreement dated January 19, 2012 and a management contract with a term of December 30, 2011 - December 31, 2017, at which time the management agreement will be renegotiated.  Debtor values this asset as having no value.

    c.    Shares of stock in a Delaware corporation formerly known as Seahorse Power Company and now known as Big Belly Solar, Inc. which does business as Fat Belly (or Big Belly) recycle bins.  Debtor values this asset as unknown.

4.    The Debtor defaulted in payment on the Notes in September 2011 and has failed to make any regular monthly payments on any of the Notes since that date. As of the Petition Date, sums owed under the Notes are as follows:

    See attached Worksheet and account history for post-petition and pre-petition breakdown of all payment and charges attached as exhibit "F".

5.    Kirshner, prior to the Debtor's bankruptcy filing, took all steps necessary to perfect his security interest in the Kirshner Collateral including notice to the managing partners of CC LLC and WEJJ-MED who are, the Debtor and Jeffrey Goldshine (Goldshine).  The Debtor consented to Kirshner receiving a lien on and a security interest in the Debtor's economic interest in CC LLC and WEJJ-MED, as did Goldshine.

- 6 -

6. On May 26, 2015 (the "Petition Date"), the Debtor commenced this case by filing in this Court a voluntary petition under Chapter 7 of the Bankruptcy Code.

7. The regular monthly interest payment under all of the Notes combined is $14,811.80 (per diem of $477.80). As of the petition date, the Debtor has not made a regular monthly payment of interest on any of the Notes since September 2011. The Debtor has been unable to make regular monthly payments on any of the Notes since September 2011, and is currently unable to make regular payments.

8. The Debtor is an attorney. The Debtor drafted all three Notes and the Security Agreement. The Debtor drafted the UCC Financing Statement and recorded same.

## VALUE OF THE PROPERTY AND LIENS ON THE PROPERTY

9. WEJJ-MED Realty LLC has a series of Medicaid reimbursements in process. Kirshner is informed by memo that the reimbursements owed to WEJJ-MED Realty LLC totals $356,651.00. A true copy of said memo is attached hereto as Exhibit "G."

10. WEJJ-MED Realty LLC also owns six leases with CVS drugstores in various locations. According to the Debtor in his testimony and a memo obtained by Kirshner, the CVS leases because of tax recoveries have no value to the Debtor or his estate.

A true copy of said memo is attached hereto as exhibit "H".

- 7 -

12. F.S. Pop, LLC has a non transferable liquor license and management agreement with a restaurant. Debtor values this asset as having no value. Kirshner believes that when the management agreement expires (12/17) there should be value at least equal to the value of said management contract when it was negotiated in 2011. Since there is no allocation cited in the purchase agreement, Kirshner would argue that this asset has a value of $100,000.00 to a going concern at the same location.

13. Big Belly Solar, Inc. (f/k/a Seahorse Power Company). is a local company that manufactures recycling bins. Debtor puts this value as unknown. Kirshner believes that there is value in this stock and estimates it to be worth between $50,000.00 - 100,000.00.

14. Upon information and belief, as of the Petition Date, the Kirshner Collateral is not encumbered by any liens other than Kirshner's Liens.

15. Based upon the foregoing, the Debtor lacks equity in the Kirshner Collateral as both the fair market value and the liquidation value of the Kirshner Collateral are less than the indebtedness secured by the Kirshner Collateral.

16. Other than the Kirshner Collateral, Kirshner holds no additional collateral of significant value for the Notes.

**LEGAL ARGUMENTS**

**Kirshner is entitled to relief from stay under 11 U.S.C. § 362(d)(1)**

17. Bankruptcy Code 11 U.S.C. § 362(d)(1) provides that a party with an interest in property of a debtor is entitled to relief from the automatic stay to exercise its

- 8 -

rights against the Debtor's property if the Debtor has not provided adequate protection for the party's interest..

18.     As has been stated above, the fair market value of the Kirshner Collateral is approximately $531,651.00 and the liquidation value of the Kirshner Collateral is substantially less than that. The liens on the Kirshner Collateral held by Kirshner totaled not less than $2,738,753.80 as of the Petition Date. The Debtor has no equity in the Kirshner Collateral.

19.     In order to prevail under 11 U.S.C. § 362(d)(1) Kirshner must establish the following elements: 1. a debt is owed from the Debtor to Kirshner, 2. Kirshner holds a security interest which secures the debt, and 3. a decline in value of the collateral securing the debt, along with the Debtors failure to provide adequate protection.
<u>In Re Bivens 317 B.R. 755, 770 (Bankr. N.D. Ill 2014)</u>.

20.     There is no dispute that the Debtor owes a debt to Kirshner. Kirshner is scheduled as the Debtor's only secured creditor and is scheduled as having a claim of $2,100,000.

21.     Kirshner holds a security interest in the Debtor's intangibles, which are defined under the UCC as the economic interest (or proceeds) in the Debtor's interests in the LLC's. Case after case has decided that a secured creditor with a security agreement and blanket UCC filing has a valid lien against a debtor's economic interest in distributions, dividends and future sale proceeds. Nothing in the limited liability companies' operating agreement prohibits the transfer of the Debtor's economic interest

and the Debtor himself consented to such a transfer when he executed and recorded the notes, security agreement and UCC financing statement.

22.     It is well established that limited partnership interests (as these LLC interests are) are general intangibles covered by Article 9 of the UCC <u>In Re Weiss 376 BR 967 ND IL2 2007 Citing Newcombe v. Sundara 654 NE 2530 (1995)</u>.

23.     In the instant case interest is accruing at a rate of over $14,000. per month. Kirshner's interest is diminishing in value and the Debtor has not and cannot offer any adequate protection for Kirshner's interest.

### Kirshner is entitled to Relief From Stay under 11 U.S.C. § 362(d)(2)

24.     Bankruptcy code § 362(d)(2) provides that a party with an interest in property of the Debtor is entitled to Relief from the Automatic Stay to exercise its right against the Debtor's property if (i.) the Debtor has no equity in the property, (ii) the property is not necessary for an effective reorganization.

25.     In this case, Kirshner's claims totals $2,738,753.80 as of 11/1/15, with a per diem of $477.80.  The maximum total value of the Kirshner Collateral is $531,651.00. Thus neither the Debtor nor his estate has any equity in the Kirshner Collateral.

26.     The Debtor has filed a Chapter 7 bankruptcy.  No reorganization is possible. Therefore the Kirshner Collateral is not necessary for an effective reorganization of the Debtor.

27.     Kirshner is entitled to Relief From the Automatic Stay under 11 U.S.C. § 362(d)(2).

**Kirshner is entitled to Relief From Stay under the Theory of Promissory Estoppel**

28.     To establish a claim for promissory estoppel, Kirshner must demonstrate that (1) the Debtor made an unambiguous promise to Kirshner, (2) Kirshner relied upon such promise, (3) Kirshner's reliance was expected and foreseeable by Debtor, and (4) Kirshner relied upon the promises to his detriment:

See <u>Dumas v. Infinity Broad. Corp 416F3d 671 (7th cir 2005)</u>.

29.     The Notes and the security agreement were drafted by the Debtor to insure Kirshner that the Debtor's unambiguous promise to repay the Notes would be fulfilled.

30.     Kirshner advanced the funds to the Debtor on his promise to repay same and relied upon the unambiguous promise and the Notes and security agreement to protect his interest in the Kirshner Collateral.

31.     The Debtor, an attorney, knew that Kirshner was relying upon his promise, and induced Kirshner to loan him the funds by making the promises, and drafting and executing the loan documents.

32.     Since the notes have not been paid, and the Debtor has stopped communicating with Kirshner, it is irrefutable that Kirshner relied upon the unambiguous promises to his detriment.

- 11 -

## ARGUMENT

33. Kirshner's maximum valuation of the Kirshner Collateral is $531,651.00. Kirshner is owed $2,738,753.80 (as of 11/1/15). No principal has ever been paid. The current nondefault contract rate of Kirshner's loan to the Debtor is 8.0 % . Based upon these figures, there is no equity in the Debtor's estate. The continuation of the automatic stay must be conditioned upon the Debtor's adequate protection payment of $14,811.80 to the Kirshner. Since filing and prior thereto, that payment has not been made by the Debtor or his estate.

34. Based upon the foregoing, Kirshner requests that any order entered granting Kirshner relief from the automatic stay and waiving and making ineffective the 14 day stay of such order otherwise in effect under Bankruptcy Rule 4001(a)(3). A proposed form of Order granting Kirshner relief from the automatic stay is attached hereto.

- 12 -

WHEREFORE, Kirshner respectfully requests that this Court:

1.      Enter an Order: (i) granting Kirshner and his successors and assigns relief from the automatic stay so that Kirshner, his successors and assigns, may proceed to exercise any and all rights and remedies under the Loan Documents with respect to the Kirshner Collateral, and any other collateral under the Loan Documents including, without limitation, conducting a sale of the Kirshner Collateral under the security agreement held by Kirshner and applicable law; and (ii) determining that the 14 day stay provided by Bankruptcy Rule 4001(a)(3) is waived and not in effect with respect to such Order; and

2.      Grant such further relief as the Court deems just and proper.

                Respectfully Submitted,

                Barry Kirshner

By:    /s/ Michael S. Kalis
       Michael S. Kalis, Esq.
       of counsel Rudolph Friedmann LLP
       632 High Street
       Dedham, MA  02026
       BBO #256930
       (781) 461-0030  Fax (781)461-4563

Dated:  November 18, 2015       mikalislaw@verizon.net

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

IN RE:

DOUGLAS B. NOBLE                                         CHAPTER 7
                                                         CASE NO.:  15-12077 FJB
          Debtor

CERTIFICATE OF SERVICE

    I, Michael S. Kalis, hereby certify that on November 18, 2015, I caused a true copy of the above **Motion For Relief From the Automatic Stay with Proposed Order** to be served electronically through the ECF system on the Chapter 7 Trustee, Debtor's counsel, and to all who are registered to receive electronic Notice, and by first-class US mail, postage prepaid, upon all those on the attached mailing matrix.

By:    /s/ Michael S. Kalis
Michael S. Kalis, Esq. BBO#256930
632 High Street
Dedham, MA 02026
(781) 461-0030 Fax (781) 461-4563
mikalislaw@verizon.net
Of Counsel, Rudolph Friedmann LLP